UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| CAROL P. LYONS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) DEMAND FOR JURY TRIAL ) |
| vs. | ) ) |
| WALMART, INC.; GREEN DOT CORPORATION; & GREEN DOT BANK, d/b/a BONNEVILLE BANK, | ) ) ) ) |
| Defendants. | ) ) |

Case No. _____

## CLASS ACTION COMPLAINT

Plaintiff Carol P. Lyons ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendants Walmart, Inc., Green Dot Corporation, and Green Dot Bank, d/b/a Bonneville Bank. In support thereof, Plaintiff states and alleges as follows:

### INTRODUCTION

1. This is a Class Action regarding gift cards issued by Green Dot and sold at Walmart. These gift cards are poorly packaged and sold in a store with minimal security (despite the known and reported risk that the gift cards are easily tampered with). Because of Defendants' negligence, consumers, like Plaintiff, are purchasing and loading money onto these gift cards only to discover when they (or their gift recipients) try to use the cards that they have no value. While Plaintiff and putative Class members are stuck with a worthless gift card and out whatever they paid for the card, Defendants pocket the purchase fee associated with the sale. Thus, Defendants are being unjustly enriched to the detriment of consumers, such as Plaintiff, a retired schoolteacher who was

1

purchasing the gift cards as a Christmas present for her grandchildren. Plaintiff was embarrassed to learn that, despite the hundreds of dollars she paid, she was unable to give her grandkids the Christmas present she had saved for.

2. Plaintiff brings this action, claiming breach of the implied warranties of merchantability and fitness for a particular purpose, on behalf of those who, like her, were injured by Defendants' conduct. Plaintiff also brings individual claims for negligence and unjust enrichment against both Defendants.

**PARTIES**

3. Plaintiff Carol P. Lyons is an individual and resident of Montgomery, Alabama, residing in this judicial district.

4. Defendant Walmart, Inc. is a Delaware Corporation with its principal place of business in Arkansas. Defendant Walmart, Inc. does business in the State of Alabama and may be served here via its registered agent, C T Corporation System, at 2 North Jackson St., Suite 605, Montgomery, AL 36104.

5. Defendant Green Dot Corporation is a Bank Holding Company and the parent of the FDIC registered national bank Green Dot Bank d/b/a Bonneville Bank (collectively referred to as "Green Dot"), whose primary business is issuing and servicing pre-paid and reloadable debit card accounts to consumers nationwide.

6. Green Dot Corporation is a Delaware Corporation with its principal place of business in Texas. Defendant Green Dot Corporation does business in the State of Alabama and may be served here via its registered agent, Corporation Service Company Inc., at 641 South Lawrence Street, Montgomery, AL 36104.

7. Green Dot Bank d/b/a Bonneville Bank is an FDIC member bank (FDIC Cert #22653) with its main office address at 1675 N. 200 W., Provo, UT 84604. Defendant Green Dot Bank does business in the State of Alabama and may be served at its main office address (1675 N. 200 W., Provo, UT 84604).

## JURISDICTION & VENUE

8. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between parties and the matter in controversy exceeds $5,000,000.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

10. This court has personal jurisdiction over the Defendants.

## GENERAL ALLEGATIONS

***Because of Defendants' conduct, Ms. Lyons did not have Christmas presents for her grandchildren.***

11. Ms. Lyons is a retired schoolteacher living in Montgomery, Alabama. This past Christmas, she gave four of her grandchildren a $100 Visa prepaid gift card to use on whatever their hearts desired within that limit. When her grandchildren went to select their gift, they were disappointed to learn that there was no money on their gift card. Their grandmother had given them $0. Thus, not only was Ms. Lyons out the hundreds of dollars she spent on the gift cards, but she also did not have a Christmas present for her grandchildren.

12. Ms. Lyons learned what happened on January 11, 2023 when her son called to tell her that something was wrong with the gift cards. He had tried to use one of them to make a purchase for her grandchild, but the card had no value. The same turned out to be true for all of the gift cards Ms. Lyons had purchased for her grandchildren.

13. Embarrassed and upset, Ms. Lyons contacted Walmart, where she purchased the gift cards, the next day. A customer service representative printed off her receipt and asked her to bring in the physical cards. Once Ms. Lyons obtained the cards back from her grandchildren, she returned to Walmart as she was instructed. Unfortunately, Ms. Lyons was met with an unfriendly employee who refused to assist her or allow her to speak to a manager. Although Ms. Lyons was never able to speak to a Walmart manager, she did get the attention of another Walmart employee that day who introduced her to an employee that worked in Walmart security. This employee told Ms. Lyons that she would call Walmart corporate and put in a report. She suggested Ms. Lyons do the same and told her that Walmart corporate would return her money.

14. As instructed, Ms. Lyons called Walmart corporate. She spoke to someone named Julie who transferred her to Martha. Martha informed her that because the cards were purchased from a third party, she could not refund the money. Martha suggested Ms. Lyons call Green Dot.

15. Following Martha's instructions, Ms. Lyons reached out to Green Dot. The gift card packaging identifies Green Dot Bank as the issuer: "The Walmart Visa Gift Card is issued by Green Dot Bank, pursuant to a license from Visa U.S.A., Inc." Ms. Lyons called and emailed Green Dot numerous times but never received her money back.

16. For example, on January 19, 2023, Ms. Lyons emailed a Green Dot representative and explained that she had purchased four Visa gift cards from Walmart as a present for her grandchildren; that as of January 11, 2023, she discovered the cards had no value and she had been scammed; and that she had reported the scam to the local police. She attached pictures of the cards, her receipt, and the case number from her report to the Montgomery Police Department. She requested that Green Dot help her resolve the issue as soon as possible.

17. On January 25, 2023, Ms. Lyons emailed the same Green Dot representative expressing her frustration with how Green Dot was treating her: "I called the number on the back of the [card] this morning. After an extensive time I spoke with a customer service person. The gentleman on the phone told me that my case number did not exist." She further stated that she paid cash for the cards and had a receipt.

18. On January 31, 2023, Ms. Lyons again emailed Green Dot. She described her experience from January 25, 2023 when she called to speak to a representative and, after waiting over an hour, was unable to receive any help. She noted:

> This experience with Walmart and Green Dot has been unpleasant and very frustrating for me. The card were Christmas gifts to my 4 little grand babies. Because of this fraud situation my grand children did not have any gifts from me on Christmas day.

She included her case number, stated that she felt Green Dot and Walmart were both responsible for her loss and that neither Green Dot nor Walmart had helped her.

19. When Ms. Lyons's efforts to resolve the issue herself failed, she filed an action in the small claims court of Montgomery. She also contacted her local radio station and the Better Business Bureau.

20. Ms. Lyons suspected that she was not the only victim. She dismissed her small claims action in order to represent a class of persons who have been similarly harmed by Defendants' conduct.

21. In total, Ms. Lyons paid $419.76 in cash for the four gift cards. Each card was represented as having a value of $100. There was a $4.94 fee associated with the purchase of each card. A copy of her receipt is attached hereto as Exhibit 1.

***Scammers relish Green Dot's poor packaging and Walmart's minimal security.***

22.     When purchasing gift cards purporting to be issued by Green Dot (referred to herein as "Green Dot cards"),[1] consumers, like Ms. Lyons, pay to load funds onto the Green Dot cards at the point of purchase at a Walmart retail store for those funds to be used at a later time.  Walmart then activates the Green Dot card.

23.     Unfortunately, scammers take advantage of Green Dot's poor packaging and Walmart's minimal security.  These third-party scammers are placing fake barcodes over the real barcode on Green Dot cards, and/or replacing the Green Dot cards with different gift cards, so that when the Green Dot cards are activated by Walmart employees, the funds go directly to the third party rather than the buyer.

24.     Upon activation, third parties are able to utilize their barcodes to deplete or use the funds loaded by the buyer onto the gift card.  As a result, the purchased Green Dot cards become worthless prior to any authorized use by the consumer.

25.     Plaintiff and putative Class members purchase and load funds onto the Green Dot cards at Walmart retail stores under the mistaken belief that the gift cards are secure, merchantable, and fit for their intended use – the future use and availability of the funds loaded onto the gift cards.

---

[1] The packaging of the gift cards Plaintiff purchased clearly indicate that the cards inside the packages were issued by Green Dot Bank.  However, the cards themselves are different and state, depending on the card, that they were issued by The Bancorp Bank or Sutton Bank.  Thus, a third-party may have not only inserted a fake barcode but also a totally different gift card inside Green Dot's insecure packaging.

***Defendants know that buyers are being sold worthless gift cards but have failed to take any action.***

26. On information and belief, Defendants are well aware of this ongoing and rampant scam as it is prevalent among the Green Dot cards offered for sale at Walmart locations.

27. Numerous news stations have reported on the uptick of fake barcodes being used to bilk consumers of their money. *See, e.g.*, Skyler Shepard, *Buyer Beware: New scam involves fraudulent Walmart gift cards in Palm Beach County*, 12 NEWS (Dec. 14, 2022, 4:56 PM), https://cbs12.com/news/local/giftcard-scam-in-palm-beach-county-involves-fraudulent-walmart-cards-december-14-2022 (explaining that scammers are placing paper photo copies over legitimate Walmart gift cards with images of the Green Dot cards); *see generally* Sara Goldenberg, *Some brand new gift cards wiped out of money before they're used, Cleveland BBB warns*, 19 NEWS (Mar. 22, 2022, 6:20 PM), https://www.cleveland19.com/2022/03/22/some-brand-new-gift-cards-being-wiped-out-money-before-theyre-even-used/; Jennifer Campbell-Hicks, *Authorities warn of scam involving fake barcodes on gift cards*, 9NEWS (Mar. 22, 2022, 1:27 PM), https://www.9news.com/article/news/local/scam-gift-card-fake-barcode/73-66b8a82d-0d63-456c-a95f-aece1b06fc33; FOX 5 Atlanta, *I-Team: Scammers Target Gift Cards*, YOUTUBE (Feb, 14, 2020), https://www.youtube.com/watch?v=94LcPOBYJAo; Lindsey Connell, *Warning: Scammers putting fake barcodes on gift cards*, 48 WAFF (July 17, 2019, 6:25 PM), https://www.waff.com/2019/07/17/warning-scammers-putting-fake-barcodes-gift-cards/.

28. On information and belief, the fraudulent practice of tampering with the Green Dot cards is common and known to Walmart and Green Dot. Not only has the issue been reported on, but consumers have repeatedly complained to both Green Dot and Walmart about the practice.

7

29. Despite this knowledge, Walmart associates and employees are not properly trained to inspect gift cards for tampering, and both Defendants commonly refuse to replenish the balance on the Green Dot cards or refund the money to harmed consumers like Plaintiff.

30. Despite being keenly aware of this widespread problem regarding the Green Dot cards, Defendants have failed to more securely package the Green Dot cards. Instead, they continue to sell the gift cards with knowledge that they are susceptible to tampering by third parties and that there is a risk to the consumer that their gift card will be worthless after purchase. Defendants also continue to fail to warn Plaintiff and putative Class members about this risk.

31. Defendants could have easily prevented the tampering from occurring but have done nothing. For example, Walmart could have trained its employees to physically check the gift cards for tampering before loading the card with funds. Walmart could also have used security devices or procedures to prevent the Green Dot cards from being accessed by store visitors prior to checkout, such as by having the sellable gift cards accessible to store personnel only.

32. Defendant Green Dot could have modified its packaging so that its cards are inside a wrapped packing that would have to be ripped open and the card taken out in order to tamper with the card. Despite this being the common business practice to avoid said aforementioned injuries to Plaintiff, Defendant Green Dot has refused to modify its packaging and instead allows for any third party to easily access the barcodes by leaving the information behind a simple tab that can either be placed back on the packaging and/or still seems untampered with even after the tab is removed.

33. Despite this widespread problem, Defendants continue to sell the Green Dot cards with insecure packaging that makes the cards an easy target for third party actors.

34. Both Defendants received enough customer complaints alerting them that the Green Dot cards were being tampered with and customers were being denied access to the money they loaded on the Green Dot cards to put Defendants on notice that the Green Dot cards were not guaranteed to be secure prior to or at the moment of first commercial sale at the registers in Walmart's stores.

35. Defendants have access to records indicating when the Green Dot cards are loaded, when they are redeemed, and how and where they are redeemed.

36. Both Defendants have failed and refused to replenish the balance on Plaintiff's and Class members' gift cards or refund their money. Defendants retained for themselves a $4.94 "Purchase Fee" that was charged at the time of sale to activate the Green Dot cards.

37. Defendants implicitly represented to all purchasers, including Plaintiff and putative Class members, that their gift cards are not tampered with or adulterated prior to sale in a manner that allows third parties to withdraw the cash loaded onto them.

38. Defendants failed to warn or disclose to Plaintiff and putative Class members of the probability and/or possibility that the Green Dot cards had been tampered with in a manner that allows third parties to withdraw the cash loaded onto them.

39. Defendants had special knowledge of these material facts, to which Plaintiff and Class members did not have access; thus, Defendants had a duty to disclose. Defendants failed to inform or disclose to the public, including Plaintiff and putative Class members, that their gift cards are not secure and could be tampered with prior to sale. Without this information, Plaintiff and putative Class members naturally concluded that the amounts they paid to fund the Green Dot cards would be available to them or those that they gave the cards to.

40. No reasonable consumer, including Plaintiff and putative Class members, would knowingly purchase a gift card where there was a probability and/or possibility that, prior to sale, the gift card had been compromised such that any money would be diverted to a third party.

41. As a direct and proximate result of Defendants' conduct, Plaintiff and putative Class members suffered injury.

42. Plaintiff and putative Class members were damaged in the amount of money they paid to purchase the Green Dot cards, which was partially retained by Defendants (in the form of a Purchase Fee) and otherwise, stolen by a third party due to Defendants' neglect. Additionally, Plaintiff and putative Class members suffered embarrassment, humiliation, and distress associated with giving valueless gift cards to family members, friends, and others.

43. The problem with the Green Dot cards is rampant and widespread. Although Defendants are well aware of the problem and could take reasonable efforts to resolve the problem (through more secure packaging, training employees, etc.), they continue to sell the insecure Green Dot cards.

## **CLASS ALLEGATIONS**

44. Plaintiff brings this case as a class action under FED. R. CIV. P. 23, on behalf of herself and as a representative of the following Class:

> All persons in the United States of America who purchased a Visa Prepaid card issued by Green Dot, which was subject to unauthorized use by a third party after purchase but prior to the first authorized use, at a Walmart retail store located in a state that has adopted Article 2 of the Uniform Commercial Code.

45. Unless stated otherwise, the Class includes those who made a purchase within four years of the filing of this action. For purchases made in Mississippi, South Carolina, or Wisconsin, the Class includes those who made a purchase within six years of the filing of this action. For purchases made in Iowa or Oklahoma, the Class includes those who made a purchase within five

years of the filing of this action. For purchases made in Colorado, Connecticut, and Massachusetts, the Class includes those who made a purchase within three years of the filing of this action.

46. Excluded from the Class are any person in bankruptcy, Defendants, any entity in which Defendants have a controlling interest, any of the officers, directors, or employees of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

47. The Class does not include purchases made in Louisiana of Visa Prepaid cards issued by Green Dot.

48. Plaintiff's Class satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

49. The persons who fall within the Class number at least in the hundreds and most likely thousands, satisfying the numerosity requirement. Because Class members are geographically dispersed across the nation, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct mail.

50. There are questions of fact and law common to the Class that predominate over any questions affecting only individual members. The questions of fact and law common to the Class arising from Defendants' actions include, without limitation, the following:

    a. Whether Defendants breached the implied warranty of merchantability;

    b. Whether Defendants breached the implied warranty of fitness for a particular purpose;

    c. Whether the Class sustained damages as a result of Defendants' conduct; and

d.  Whether the Class is entitled to damages as a remedy for Defendants' conduct.

51. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

52. Plaintiff's claims are typical of those of the Class in that Class members purchased or received a Green Dot card from Walmart and the funds associated with the card were stolen or misappropriated without refund or replacement.

53. A class action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds generally applicable to the Class.  The presentation of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.

54. Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of those she seeks to represent.  The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel, who have extensive experience prosecuting complex class litigation.

55. Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy.  It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts, which could result in inconsistent

adjudications while a single class action can determine, with judicial economy, the rights of all Class members.

### COUNT I: BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (As Adopted By Each State)
### (On Behalf of the Nationwide Class, Excluding Louisiana)

56. Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

57. At all times pertinent to this action, Defendants were merchants as that term is defined in the Uniform Commercial Code.

58. Defendants sold Plaintiff the Green Dot cards described more particularly above; however, at the time of sale, one or more of the Green Dot cards were not merchantable because third parties had tampered with them by either placing a different barcode on the Green Dot cards or replacing the Green Dot cards so that any money loaded onto them would be diverted to the third party. Putative class members were harmed in the same way.

59. One or more of the Green Dot cards Defendants sold Plaintiff and putative Class members were not fit for the ordinary purpose for which they are typically used because the cards had zero value even after Plaintiff and putative Class members paid to load money onto the cards. At the time of sale, the Green Dot cards had been tampered with, compromised, and/or adulterated. The Green Dot cards were insecure at the time of sale, subjecting the balance of the gift cards to loss. *See generally Chen v. Target Corp.*, No. 21-1247 (DWF/DTS), 2022 WL 1597417, at *12 (D. Minn. May 19, 2022) ("[A] Gift Card that has been compromised before the time of purchase, such that it fails to hold any value at the time it is activated is clearly unfit for the ordinary purpose for which it is used.").

60. As a direct and proximate result of the defective nature of the Green Dot cards at the time Defendants sold the cards to Plaintiff and putative Class members, Plaintiff and putative Class members suffered injury and damage in the form of the lost funds that they had loaded onto the Green Dot cards.

61. Defendants received actual notice of the defective nature of the Green Dot cards within a reasonable time of the sale of the defective gift cards through Plaintiff's and Class members' complaints about the defective nature of the Green Dot cards and loss of funds.

62. Additionally, prior to the filing of this Complaint, counsel for Plaintiff provided Defendants with written pre-suit notice of their claims dated August 22, 2023. *See* Exhibit 2.

63. Plaintiff and putative Class members seek actual and statutory damages to the fullest extent permitted.

### COUNT II: BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (As Adopted By Each State)
### (On Behalf of the Nationwide Class, Excluding Louisiana)

64. Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

65. At all times pertinent to this action, Defendants were merchants as that term is defined in the Uniform Commercial Code.

66. At the time of sale and/or contracting, Defendants had reason to know the particular purposes for which the Green Dot cards were required.

67. The particular purposes described above include but are not limited to the purchase of goods with funds Plaintiff and putative Class members loaded onto the Green Dot cards.

68. The buyers of the Green Dot cards, including Plaintiff, relied upon Defendants' skill or judgment to select or furnish suitable goods (i.e. gift cards that had not been, and were not easily susceptible to being, tampered with).

69. Defendants breached their warranty in one or more material respects described more fully above.

70. As a direct and proximate result, Plaintiff and putative Class members have been damaged in the form of the lost funds that they had loaded onto the Green Dot cards.

71. Defendants received actual notice of the defective nature of the Green Dot cards within a reasonable time of the sale of the defective Green Dot cards through Plaintiff and putative Class members' complaints about the defective nature of the Green Dot cards and the loss of funds.

72. Additionally, prior to the filing of this Complaint, counsel for Plaintiff provided Defendants with written pre-suit notice of their claims dated August 22, 2023.  *See* Exhibit 2.

73. Plaintiff and putative Class members seek actual and statutory damages to the fullest extent permitted.

## COUNT III: NEGLIGENCE
### (On Behalf of the Individual Plaintiff)

74. Plaintiff incorporates and restates by reference Paragraphs 1-43 as though fully set forth herein.

75. Defendants had a duty of care, breached that duty of care, and as a result, injured Plaintiff.

76. Defendants' conduct created a foreseeable risk of injury to foreseeable purchasers of the Green Dot cards, such as Plaintiff.

77. Defendant Green Dot negligently packaged its Green Dot cards in a manner that it knew, or reasonably should have known, was insecure and subject to the risk of tampering.

Defendant Green Dot knew or should have known that its Green Dot cards would be compromised by third parties such that Plaintiff's purchase of them was under a false pretense.

78. Likewise, Defendant Walmart negligently sold the Green Dot cards in its stores in a manner that was not secure, allowing the Green Dot cards to be accessed by third party scammers prior to purchase by Plaintiff. Defendant Walmart knew or should have known that the Green Dot cards being sold in its stores would be compromised by third parties such that Plaintiff's purchase of them was under a false pretense.

79. Defendants owed Plaintiff a duty to disclose the true nature of the Green Dot cards, including the lack of security measures taken by Defendants.

80. Defendants owed Plaintiff a duty to warn that the Green Dot cards may have been compromised.

81. Defendants owed Plaintiff a duty to refrain from selling the Green Dot cards to Plaintiff when Defendants knew or should have known that the Green Dot cards had been tampered with and that the funds associated with the Green Dot cards were likely to be stolen or misappropriated by strangers or third parties.

82. Defendants owed Plaintiff a duty to act reasonably and not place inherently defective Green Dot cards into the marketplace.

83. Defendants owed Plaintiff a duty to take all reasonable measures to ensure that Plaintiff was not purchasing defective Green Dot cards that had been compromised by third parties.

84. Defendants owed Plaintiff a duty to reimburse her for her purchase of Green Dot cards that Defendants knew or should have known were compromised.

85. Defendants owed Plaintiff a duty to ensure that the security and protection of the Green Dot cards was adequate to prevent tampering by any third party.

86. Defendants breached their duties by negligently failing to properly secure and oversee the Green Dot cards so that they could not be tampered with by third parties. More specifically, Defendant Green Dot failed to securely package the Green Dot cards such that they could not be accessed by anyone other than store personnel prior to sale and Defendant Walmart failed to implement reasonable security measures, such as proper training of its employees or placing the Green Dot cards in a location where they could only be accessed by store personnel.

87. Moreover, Defendants breached their duties by placing these defective Green Dot cards into the marketplace and misrepresenting to Plaintiff that they were non-defective and could properly be used to store funds for later use. Defendants negligently omitted that the Green Dot cards could have been tampered with and may be worthless after purchase.

88. Defendants also breached their duties by failing to warn Plaintiff of the possibility that their Green Dot cards had been compromised by third parties and that Plaintiff's funds may be withdrawn by these third parties.

89. Defendants breached their duties by never reimbursing Plaintiff for her purchase of the worthless Green Dot cards.

90. As a result of Defendants' negligence, Plaintiff was injured by, among other things, the loss of what she paid for the worthless Green Dot cards.

91. As a direct and proximate result of Defendants' negligence and the resulting harm, Plaintiff suffered and continues to suffer reasonably foreseeable injuries and damages, including, but not limited to, loss of the use and enjoyment of money.

92. Accordingly, Plaintiff seeks damages in an amount to be determined at trial.

## COUNT IV: UNJUST ENRICHMENT
### (On Behalf of the Individual Plaintiff)

93. Plaintiff incorporates and restates by reference Paragraphs 1-43 as though fully set forth herein.

94. Defendants received money under such circumstances that, in equity and good conscience, it ought not to retain, specifically the purchase fees associated with the sale of each gift card.

95. A $4.94 purchase fee was associated with the sale of each of the Green Dot cards Plaintiff purchased. This money was not loaded onto the Green Dot cards for later use by Plaintiff or her gift recipients (and thus, not at risk of being diverted to a third party). Instead, the purchase fee was paid directly to Defendants for the sale and activation of the Green Dot cards. In fact, the purchase fee is a separate line item on the receipt.

96. Consequently, in addition to losing the $400 value of the gift cards, Plaintiff also paid Defendants $4.94 per card (total of $19.76) to activate the worthless cards. Defendants have not refunded Plaintiff the purchase fees.

97. Thus, Defendants reaped a benefit by charging, and receiving, fees to "activate" the worthless cards while Plaintiff received nothing in return.

98. Defendants knew or should have known that the funds loaded onto the Green Dot cards were insecure and at risk of being compromised by a third party.

99. Defendants were enriched by retaining the profits associated with the sale of the gift cards to Plaintiff's detriment. Plaintiff had a reasonable expectation of being reimbursed for the purchase fees she incurred. It would be unjust for Defendants to retain the benefit of the sale.

100. As a result, Plaintiff has been damaged in an amount determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief as follows: an order certifying this case as a class action under FED. R. CIV. P. 23; compensatory damages in an amount to be proven at trial; statutory damages; costs; pre- and post-judgment interest at the maximum rate allowed by law; and such other legal and equitable relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated:   October 20, 2023

   /s/   Courtney C. Gipson
J. Matthew Stephens (ASB-3788-E66S)
Courtney C. Gipson  (ASB-5152-Q91K)
**METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone:     (205) 939-0199
Facsimile:      (205) 939-0399
mstephens@mtattorneys.com
cgipson@mtattorneys.com


Johnny Adams (ASB-9392-S19N)
**JOHNNY ADAMS LAW FIRM, LLC**
324 Ellis Street
Union Springs, AL 36089
Telephone:     (334) 500-5000
Facsimile:      (800) 738-6860
johnny@johnnyadamslaw.com

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL:**

**Walmart, Inc.**
c/o C T Corporation System
2 North Jackson St.
Suite 605
Montgomery, AL 36104

**Green Dot Corporation**
c/o Corporation Service Company Inc.
641 South Lawrence Street
Montgomery, AL 36104.

**Green Dot Bank d/b/a Bonneville Bank**
1675 N. 200 W.
Provo, UT 84604